## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALLEGIS GLOBAL SOLUTIONS, INC., | : | CASE NO.: |
| Plaintiff, | : | |
| v. | : | |
| POMEROY IT SOLUTIONS SALES COMPANY, INC., and POMEROY TECHNOLOGIES, LLC as successor to POMEROY IT SOLUTIONS SALES COMPANY, INC. | : | JURY TRIAL REQUESTED |
| Defendant. | : | |

## COMPLAINT OF ALLEGIS GLOBAL SOLUTIONS, INC.

Plaintiff Allegis Global Solutions, Inc. ("AGS") alleges the following against Defendant Pomeroy IT Solutions Sales Company, Inc. ("Pomeroy I") and Defendant Pomeroy Technologies, LLC ("Pomeroy II").

## PARTIES

1. Plaintiff AGS is a Maryland corporation with its principal place of business in Hanover, Maryland.

2. Pomeroy I is a Delaware corporation, which maintains a principal place of business, at the above address, in Hebron, KY.

3. As alleged more fully below, Pomeroy II is a limited-liability company and successor to Pomeroy I; Pomeroy II's citizenship is therefore determined by the citizenship of its members. A search of publicly-available information has not revealed the existence of any

Pomeroy II members who are citizens of Maryland; based upon this research, AGS alleges – in good faith – that no Pomeroy II members are citizens of Maryland.[1]

## JURISDICTION AND VENUE

4. There is complete diversity, pursuant to 28 U.S.C. § 1332, because (1) AGS is a citizen of Maryland; and (2) Pomeroy I/Pomeroy II are citizens of states other than Maryland.

5. As set forth below and incorporated herein, the amount in controversy requirements of 28 U.S.C. § 1332 are satisfied because there is more than $75,000 at issue, exclusive of costs and interest.

6. This action properly lies in the Southern District of New York because the parties executed two separate agreements, both of which contain jurisdiction/venue provisions selecting New York as the jurisdiction/venue for any subsequent dispute.

## GENERAL ALLEGATIONS

### Pomeroy and Getronics

7. Pomeroy I is a managed IT services company headquartered in Hebron, Kentucky.

8. By 2018, Pomeroy I was a well-known company that had provided managed IT services in North America for decades.

9. On or about July 2018, GTN Services B.V. ("Getronics")—a Netherlands-based IT-services business—acquired Pomeroy I; even after this acquisition, however, Pomeroy I continued to execute contracts as Pomeroy I—although sometimes identifying Getronics as a d/b/a on its contracts.

---

[1] AGS reserves the right to amend this paragraph upon securing discovery, from Pomeroy II (a privately-held LLC), after securing service on Pomeroy II.

10. In or about November 2019, Getronics announced—in an article with a headline entitled "**Pomeroy and its former CEO are back**"—that Getronics's North American business would be "**relaunching** under the **Pomeroy name**," with the former CEO of Pomeroy I (Chris Froman) "coming to head up the new Pomeroy as its CEO."[2]

11. In or about June 2020, Getronics formally separated from Pomeroy I, with an article noting that Getronics's "US business would separate, **relaunching under the Pomeroy Technologies, LLC [("Pomeroy II")] brand**, with Chris Froman as President and CEO."[3] A separate press release referenced the November 2019 announcement, noted the formation of Pomeroy II, and declared that "[t]he Pomeroy brand has **long been known** for delivering excellent service . . . ."[4]

12. After the formation of Pomeroy II, Pomeroy II began executing contracts in its own name, but incorporating/cross-referencing/honoring contracts executed by Pomeroy I.

13. Pomeroy II continued to perform the same business as Pomeroy I.

14. Pomeroy II remained in the same headquarters as Pomeroy I.

15. At the time of its formation, Pomeroy II retained most of Pomeroy I's leaders and employees.

16. In both its public website and business dealings, Pomeroy II held itself out as a continuation of Pomeroy I.

---

[2] **Ex. A** (11-20-19 *Cincinnati Business Courier* Article), at pp. 1-2 (emphasis added).
[3] **Ex. B** (6-1-20 *Daily News* Article), at p. 1 (emphasis added).
[4] **Ex. C** (6-1-20 *Pomeroy II Press Release*), at p. 1 (emphasis added).

3

### AGS's Contracts with Pomeroy I and Pomeroy II

### 8-9-19 RPOA

17. While Pomeroy I was still part of Getronics, AGS entered into business discussions with Pomeroy I regarding AGS providing recruitment process outsourcing services.

18. On or about August 9, 2019, AGS and Pomeroy I, d/b/a Getronics, executed a Recruitment Processing Outsourcing Agreement.[5]

19. Under the 8-9-19 RPOA, AGS agreed to provide recruitment process outsourcing services to Pomeroy I;[6] in return, Pomeroy I agreed that "AGS will submit monthly invoices to [Pomeroy I], and [Pomeroy I] shall pay such invoices, in accordance with the applicable Statement of Work."[7]

20. The 8-9-19 RPOA contains a "Governing Law" clause that provides that New York shall be the exclusive jurisdiction/venue for any litigation arising out of the 8-9-19 Agreement.[8]

21. On or about August 9, 2019, AGS and Pomeroy I executed a Statement of Work pursuant to the 8-9-19 RPOA.[9]

22. The 8-1-19 SOW provides that, "[w]ithin thirty (60) (sic) days of receipt of an invoice, [Pomeroy I] shall pay AGS via electronic funds transfer."[10]

### 9-17-20 RPOA

23. AGS and Pomeroy continued their business relationship after Pomeroy relaunched as Pomeroy II.

---

[5] **Exhibit D** (8-9-19 Recruitment Processing Outsourcing Agreement ("8-1-19 RPOA")).
[6] *Id.* ¶ 3.1.
[7] *Id.* ¶ 4.1.
[8] *Id.* ¶ 13.10.
[9] **Exhibit E** (8-9-19 Statement of Work ("8-9-2019 SOW")).
[10] *Id.* at Schedule A, ¶ 3.

24. Specifically, on or about September 17, 2020, AGS and Pomeroy II entered into a Recruitment Processing Outsourcing Agreement.[11]

25. The 9-17-20 RPOA clarifies the connections between Pomeroy I and Pomeroy II, including the fact that Pomeroy II would honor Pomeroy I's contractual obligations to AGS:

> WHEREAS, AGS and Pomeroy IT Solutions Sales Company, Inc. ("**Pomeroy**") entered into a Recruitment Process[ing] Outsourcing Agreement, dated April 12, 2019 ("**Existing Agreement**") under which AGS agreed to provide the Services to Pomeroy;
>
> WHEREAS, Pomeroy underwent a corporate reorganization as part of a separation from Getronics and formed Pomeroy Technologies, LLC; and
>
> WHEREAS, [Pomeroy II] and AGS now wish to replace the Existing Agreement [between Pomeroy I and AGS] with this [9-17-20 RPOA] Agreement to update certain terms and conditions.[12]

26. Based on the above wording in the 9-17-20 RPOA, it is unambiguous that the 9-17-20 RPOA is an update of, and subsumes, the 8-9-19 RPOA, rendering Pomeroy II liable for any debt incurred under the 8-9-19 RPOA.

27. Under the 9-17-20 RPOA, AGS agreed to provide recruitment process outsourcing services to Pomeroy II;[13] in return, Pomeroy II agreed that "AGS will submit monthly invoices to [Pomeroy II], and [Pomeroy II] shall pay such invoices, in accordance with the applicable Statement of Work."[14]

28. On or about September 17, 2020, AGS and Pomeroy II executed a Statement of Work to accompany the 9-17-20 RPOA.[15]

---

[11] **Exhibit F** (9-17-20 Recruitment Processing Outsourcing Agreement ("9-17-20 RPOA")).
[12] *Id.* at Introduction (emphasis in original).
[13] *Id.* ¶ 3.1.
[14] *Id.* ¶ 4.1.
[15] **Exhibit G** (9-17-20 Statement of Work ("9-17-20 SOW").

29.  The 9-17-20 SOW provides that, "[w]ithin sixty (60) days of receipt of an invoice, [Pomeroy II] shall pay AGS via electronic funds transfer."[16]

### Pomeroy I and Pomeroy II's Unpaid Invoices

30.  On or about October 14, 2019, AGS began providing services to Pomeroy I (under the 8-9-19 RPOA/SOW.

31.  For those services, AGS issued invoices, which total $906,655.[17]

32.  Despite retaining the benefit of the services reflected by the invoices, Pomeroy I and Pomeroy II have not paid any of the 8-9-19 RPOA Invoices, and therefore owe AGS $906,655.

33.  After AGS and Pomeroy II executed the 9-17-20 RPOA, AGS provided additional recruitment process outsourcing services.

34.  For these additional services, AGS issued invoices totaling $126,045.50.[18]

35.  Despite retaining the benefit of the services reflected by the invoices, Pomeroy II has not paid any of the 9-17-20 RPOA Invoices, and therefore owes AGS $126,045.50.

### Pomeroy II is a Successor to Pomeroy I

36.  Based on publicly-available information and other investigation, AGS understands that Pomeroy I has ceased business operations.

37.  Pomeroy II operates out of the same location as Pomeroy I—1020 Petersburg Road, Hebron, KY 41048.

38.  Pomeroy I and Pomeroy II engage in the exact same business:

---

[16] *Id.* at Schedule A, ¶ 3.
[17] **Exhibit H** (8-9-19 RPOA Invoices).
[18] **Exhibit I** (9-17-20 RPOA Invoices).

6

      a.     On Pomeroy I's 2013 website, it represents that it performs "Managed Services" in addition to "[h]ardware and software procurement, configuration and deployment."[19]

      b.     On Pomeroy II's 2022 website, it represents that it performs "Managed Workplace Services" and that it handles "Device Lifecycle" with "Speedy Delivery."[20]

39.     As described above, Chris Froman—the CEO of Pomeroy I—oversaw Pomeroy's operations while it was still under Getronics, and continued in that role after the creation of Pomeroy II; Pomeroy II's remaining leadership team contains numerous people who also worked for Pomeroy I.

40.     The bios of Pomeroy II's leadership team reinforce the continuity between Pomeroy I and Pomeroy II:

      a.     The biography of Pomeroy II's President, John Blackburn, states that he "joined Pomeroy in **2001**,"[21] and makes no distinction between Pomeroy I/II.

      b.     The biography of Pomeroy II's Chief Product Officer, Bob Burlas, states that, "[i]n **2008**, Bob started at Pomeroy as the Regional Vice President for the Cincinnati Region,"[22] and makes no distinction between Pomeroy I/II.

      c.     The biography of Pomeroy II's Chief of Staff, Heather Secrist-Kitzerow, states that, "[p]reviously Heather held other positions at Pomeroy from **2009 to 2018**."[23]

---

[19] **Exhibit J** (Relevant Sections from Pomeroy I's 2013 Website).
[20] **Exhibit K** (Relevant Sections from Pomeroy II's 2022 Website), at pp. 3, 7.
[21] **Exhibit L** (Relevant Sections from Pomeroy II's Website's discussion of its "Leadership Team") (emphasis added).
[22] *Id*. (emphasis added).
[23] *Id*. (emphasis added).

d.  The biography of Pomeroy II's Vice President of Technology, Holly Clark, refers to her as "joining Pomeroy in **2009**."[24]

41.  Based upon public information and other investigation, Pomeroy II has retained a high percentage of workers who formerly worked for Pomeroy I.

42.  Pomeroy II's website holds itself out as being a continuation of Pomeroy I, stating, *inter alia*, that Pomeroy II—a company formed less than two years ago[25]—possesses "**40 years of experience** designing, deploying and managing integrated solutions" and that it has been "**in business**" for "**40 years**."[26]

43.  Pomeroy I (Pomeroy IT Solutions Sales Company, Inc.) and Pomeroy II (Pomeroy Technologies, LLC) have virtually the same name, and online queries under either legal name lead to the same website.

44.  The 9-17-20 RPOA refers to Pomeroy II as a "**reorganization**" of Pomeroy I—not a new corporate formation—and describes the 9-17-20 RPOA as a mere "**update**" of the 8-19-19 RPOA.[27]

45.  Upon information and belief, Pomeroy I effected a legal transfer of all of Pomeroy I's assets, benefits, debts, and liabilities to Pomeroy II, in order to complete a continuation of Pomeroy I to Pomeroy II.

46.  Pomeroy II now operates as a successor to Pomeroy I, acting as a continuation of Pomeroy I.

---

[24] *Id*. (emphasis added).
[25] **Exhibit M** (Pomeroy II's Secretary of State Filings).
[26] **Exhibit N** (Relevant Sections from Pomeroy II's Website discussing "Partners" and "About Us").
[27] **Exhibit F** (9-17-20 RPOA).

## COUNT I—BREACH OF CONTRACT
### Against Pomeroy I and Pomeroy II (as a successor to Pomeroy I)

47. AGS incorporates by reference and realleges each allegation above, as though fully set forth herein.

48. On or about August 9, 2019, AGS and Pomeroy executed the 8-9-19 RPOA and SOW.

49. Under the 8-9-19 RPOA and the associated SOW, Pomeroy I agreed to pay AGS's invoices for AGS's recruitment process outsourcing services under the 8-9-19 RPOA.

50. Pomeroy II, is a mere continuation of, and successor to, Pomeroy I, and is therefore jointly/severally liable for the 8-9-19 Invoices.

51. Pomeroy II is merely a reorganization of Pomeroy I.

52. Pomeroy I derived benefits from the actual or *de facto* continuation of Pomeroy II.

53. The circumstances surrounding any cessation of business operations by Pomeroy I give rise to an implied assumption or agreement to continue Pomeroy I's operations through Pomeroy II, and Pomeroy II should be responsible for any debts incurred by Pomeroy I.

54. Upon information and belief, Pomeroy I effected a legal transfer of all of Pomeroy I's assets, benefits, debts, and liabilities to Pomeroy II, in order to complete a continuation of Pomeroy I to Pomeroy II.

55. To whatever extent Pomeroy I ceased its operations or is otherwise unable to remit payment for the 8-9-19 Invoices, Pomeroy II should be treated as the successor and thereby assume liability for any debts, to AGS, incurred by Pomeroy I.

56.     AGS performed work under the 8-9-19 RPOA/SOW and sent corresponding invoices totaling $906,655.[28]

57.     Despite retaining the benefit of the services reflected by the invoices, Pomeroy I and Pomeroy II have not paid any of the 8-9-19 RPOA Invoices.

58.     AGS fully performed its duties under the 8-9-19 RPOA and the associated SOW.

59.     AGS has been damaged as a result of Pomeroy I/Pomeroy II's breaches of the 8-9-19 RPOA, in the amount of $906,655, plus additional pre-judgment and post-judgment interest, and costs.

WHEREFORE, AGS seeks a judgment against Pomeroy I and Pomeroy II in an amount no less than $906,655, plus costs, expenses, pre-judgment and post-judgment interest, and such further legal and equitable relief as this Court deems appropriate or such other amounts as determined by this Court.

### COUNT II—UNJUST ENRICHMENT
### (Plead in the Alternative to Count I)
### (Against Pomeroy I and Pomeroy II as a successor to Pomeroy I)

60.     AGS incorporates each of the preceding allegations as if fully restated herein.

61.     In the alternative to Count I, Pomeroy I and Pomeroy II (as successor to Pomeroy I) are liable to AGS under the theory of unjust enrichment.

62.     At all relevant times herein, AGS conferred benefits upon Pomeroy I and Pomeroy II, through Pomeroy I, by providing Pomeroy I with recruitment process outsourcing services.

63.     At all relevant times herein, Pomeroy I and Pomeroy II, through Pomeroy I, had knowledge of the benefits conferred by AGS.

---

[28] **Exhibit H** (8-9-19 RPOA Invoices).

64. Pomeroy I and Pomeroy II voluntarily accepted, retained, and received the benefits provided by AGS.

65. AGS enriched Pomeroy I and Pomeroy II, through Pomeroy I, by the benefits provided.

66. Neither Pomeroy I nor Pomeroy II paid AGS in full for the value of the benefits received.

67. AGS asserts that the remaining unpaid value of the benefits it conferred to Pomeroy I and Pomeroy II, through Pomeroy I, equals $906,655.

68. Despite the receipt of the enrichment, Pomeroy I and Pomeroy II refuse to make full payment to AGS for the enrichment received.

69. The enrichment to Pomeroy I and Pomeroy II is unjust.

70. The retention of benefits by Pomeroy I and Pomeroy II, through Pomeroy I, under these circumstances violates fundamental principles of justice, equity, and good conscience; the circumstances render Defendants' retention of the benefits inequitable unless Defendants pay AGS for the value of the benefit received.

71. As a result of Pomeroy II's unjust enrichment, through Pomeroy I, AGS is owed $906,655, plus additional pre-judgment and post-judgment interest and costs.

WHEREFORE, AGS seeks a judgment against Pomeroy I and Pomeroy II in an amount no less than $906,655, plus costs, expenses, pre-judgment and post-judgment interest, and such further legal and equitable relief as this Court deems appropriate or such other amounts as determined by this Court.

## COUNT III—BREACH OF CONTRACT
### (Against Pomeroy II)

72. AGS incorporates by reference and realleges each allegation above, as though fully set forth herein.

73. On or about September 17, 2020, AGS and Pomeroy II executed the September 17, 2020 RPOA and SOW.

74. Under the 9-17-20 RPOA and associated SOW, Pomeroy II agreed to pay AGS's invoices for AGS's recruitment services.

75. AGS performed work under the 9-17-20 RPOA and SOW and sent Pomeroy II corresponding invoices, which total $126,045.50.[29]

76. Despite retaining the benefit of the services reflected by the invoices, Pomeroy II has not paid any of the 9-17-20 RPOA Invoices.

77. AGS fully performed its duties under the 9-17-20 RPOA and the associated SOW.

78. Pomeroy II failed to perform under the 9-17-20 RPOA and SOW by failing to pay the invoices in question.

79. AGS has been damaged as a result of Pomeroy II's breaches, in the amount of $126,045.50, plus additional pre-judgment and post-judgment interest, and costs.

WHEREFORE, AGS seeks a judgment against Pomeroy II in an amount no less than $126,045.50, plus costs, expenses, pre-judgment and post-judgment interest, and such further legal and equitable relief as this Court deems appropriate or such other amounts as determined by this Court.

---

[29] **Exhibit I** (9-17-20 RPOA Invoices).

**COUNT IV—UNJUST ENRICHMENT**
**(Plead in the Alternative to Count III)**
**(Against Pomeroy II)**

80. AGS incorporates each of the preceding allegations as if fully restated herein.

81. In the alternative to Count III, Pomeroy II is liable to AGS under the theory of unjust enrichment.

82. At all relevant times herein, AGS conferred benefits upon Pomeroy II by providing Pomeroy II with recruitment services.

83. At all relevant times herein, Pomeroy II had knowledge of the benefits conferred by AGS.

84. Pomeroy II voluntarily accepted, retained, and received the benefits provided by AGS.

85. AGS enriched Pomeroy II by the benefits provided.

86. Pomeroy II did not pay AGS in full for the value of the benefits received.

87. AGS asserts that the remaining unpaid value of the benefits it conferred to Pomeroy II equals $126,045.50.

88. Despite the receipt of the enrichment, Pomeroy II refused to make full payment to AGS for the enrichment received.

89. The enrichment to Pomeroy II is unjust.

90. The retention of benefits by Pomeroy II under these circumstances violates fundamental principles of justice, equity, and good conscience; the circumstances render Pomeroy II's retention of the benefits inequitable unless it pay AGS for the value of the benefit received.

91. As a result of Pomeroy II's unjust enrichment, AGS is owed $126,045.50, plus additional pre-judgment and post-judgment interest and costs.

WHEREFORE, AGS seeks a judgment against Pomeroy II in an amount no less than $126,045.50, plus costs, expenses, pre-judgment and post-judgment interest, and such further legal and equitable relief as this Court deems appropriate or such other amounts as determined by this Court.

Dated:  **May 3, 2022**

                Respectfully submitted,

_____
William E. Vita
1325 Avenue of the Americas
New York, New York
T: 212-989-8844
D: 212-779-6103

Steven M. McCartan*
Charles Rosebrough*
Shook, Hardy & Bacon LLP
2555 Grand Blvd.
Kansas City, MO 64108
*Pro hac vice* motion forthcoming

*Attorneys for AGS Global Solutions*